UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **LARRY LEWIS** | **CIVIL ACTION NO. 18-0800** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE ELIZABETH E. FOOTE** |
| **JERRY GOODWIN, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Plaintiff Larry Lewis, an inmate at David Wade Correctional Center proceeding pro se and in forma pauperis, filed the instant Complaint on June 13, 2018, under 42 U.S.C. § 1983. He names the following Defendants: Jerry Goodwin, Dr. Hearne, Col. Nail, Deborah Cody, Joel Williams, and Kayla Sherman.[1] For the following reasons, it is recommended that Plaintiff's claims be **DISMISSED WITH PREJUDICE**.

## Background

Plaintiff suffers from incomplete quadriplegia and claims that, after arriving at David Wade Correctional Center ("DWCC") on August 14, 2017, he was placed on a tier that lacked a handicap-accessible shower. The shower on his tier had no railings, no handicap shower chair, and an approximately 1.5 ft. elevated entrance that "made it difficult to get in and out . . . ." Plaintiff "constantly complain[ed] to security," but they referred him to "classification."

Plaintiff claims that, on August 30, 2017, he submitted a "sick call" request, explaining the "difficulties [he] was having showering." He did not receive a response. On August 31, 2017, he wrote a letter to Defendant Deborah Cody, a "classification" official, informing her that

---

[1] This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

he needed a shower chair and a handicap-accessible shower with hand rails. On September 4, 2017, Plaintiff fell attempting to exit the shower and suffered a "big cut" or "extreme gash" on his toe. Defendant, Nurse Williams, gave Plaintiff two Tylenol and one package of triple antibiotic ointment. Dr. Hearn prescribed a shower chair for Plaintiff on September 8, 2017. [doc. # 1-2, p. 5].

Plaintiff alleges that he "made sick call" on September 5, 2017, but did not see a physician. [doc. # 6, p. 5]. "To this date," he has yet to see a physician. *Id.* He also contends that he has not received a CAT scan, an MRI, an x-ray, or treatment from a neurologist.

Plaintiff complains that he is no longer prescribed Neurontin, a medication to aid his nerve pain. He took the medication for four years, but a physician "discontinued" it on August 27, 2017, informing Plaintiff that he did not need it. Plaintiff submitted requests for the medication on September 7, 2017, and October 2, 2017, stating that his pain and muscle spasms were worsening, but he alleges that he did not receive a response. He submitted a third request on October 5, 2017, after he began feeling even more intense pain, numbness, burning, and itching.

Plaintiff seeks $40,000.00 in compensatory damages against each Defendant, $10,000.00 in punitive damages against each Defendant, and both a preliminary and permanent injunction ordering Dr. Hearne to prescribe Neurontin.

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is

subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Likewise, a complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

A civil rights plaintiff must support his claims with specific facts demonstrating a

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662; *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

**2. Conditions of Confinement/Medical Care**

Plaintiff claims that Defendants deprived him of access to a handicap shower and a handicap shower chair. Whether construed as a denial of medical care claim or a conditions of confinement claim, Plaintiff must allege facts demonstrating that each Defendant was deliberately indifferent. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) ("Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard . . . .").

"To state an Eighth Amendment claim based on prison conditions, a plaintiff must show a sufficiently serious deprivation and must show that the relevant official or officials acted with deliberate indifference to inmate health or safety. With respect to medical care, prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they demonstrate deliberate indifference to a prisoner's serious medical needs, constituting an

unnecessary and wanton infliction of pain." *Bruce v. Little*, 568 F. App'x 283, 285 (5th Cir. 2014). To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must have drawn the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff arrived at DWCC on August 14, 2017. [doc. # 1, p. 8]. On August 28, 2017, before his September 4, 2017 fall, a physician examined him "to determine an appropriate medical duty status to accommodate [his] needs." [doc. # 1-2, p. 20]. The physician ordered him to continue using his cane and to use a walker when needed. *Id.* at 6-7, 20.

That the physician chose not to order access to a handicap shower or shower chair—and instead prescribed a cane and walker—does not evince deliberate indifference. Rather, Plaintiff simply quarrels with the physician's medical opinion. See *Kadlec v. Garcia*, 273 F.3d 392 (5th Cir. 2001) (finding that an inmate did not state a claim when he alleged that a medical professional decided that he did not require a handicap shower; the allegation reflected "his disagreement with the medical staff regarding what medical treatment he should receive."); *Holland v. Patel*, 236 F. App'x 136, 137 (5th Cir. 2007) ("[Plaintiff's assertion that he required a cane and that [a physician] wrongfully took his away amounts to no more than a mere disagreement with the medical treatment he received or, at most, a claim for negligence and was thus properly dismissed."); *Morgan v. Mississippi*, 2009 WL 1609060, at *6 (S.D. Miss. June 8, 2009) ("Even if [the doctor] did ignore Plaintiff's request for a shower wheelchair . . . this constitutes negligence, which is not actionable under the constitution."); *Adams v. Pearl River*

5

*Cty. Jail*, 2009 WL 1686611, at *6 (S.D. Miss. June 16, 2009).[3]

Next, Plaintiff claims that, on August 30, 2017, he submitted a "sick call" request, explaining the "difficulties [he] was having showering," but he did not receive a response. [doc. #s 1-2, p. 17; 6, p. 4]. He does not, however, identify an individual responsible for ignoring his request.

Finally, Plaintiff alleges that, on August 31, 2017, he wrote a letter to Defendant Deborah Cody, informing her that he needed a shower chair and a handicap-accessible shower with hand rails. [doc. # 6, p. 4]. Cody responded the same day, writing: "I only show a duty status indicating bottom bunk in the system. It may not be in the system yet if you just saw the dr. [sic]. I am forwarding your letter to Col Nail." [doc. # 1-2, p. 18]. Cody responded promptly, reviewing Plaintiff's duty status and relaying his concern to another official. Moreover, only four days elapsed from when she took action and when Plaintiff fell; there was little time for her to ameliorate the challenged conditions. While Plaintiff may disagree with the speed or effectiveness of Cody's actions, the actions do not amount to deliberate indifference. See *Kadlec*, 272 F.3d at 392 (holding that prison officials' decisions to abide "by the medical personnel's instructions" to "refuse to provide [the inmate] with a handicap shower[]" did not reflect deliberate indifference).

---

[3] See also *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992) (holding that "disagreement with [an inmate's] medical classification is insufficient to establish a constitutional violation."); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (holding that medical personnel's decision that Plaintiff could walk in a dining hall and that he did not need to receive meals in the infirmary did not state a constitutional or federal claim); *McFarland v. Johnson*, 54 F. App'x 406 (5th Cir. 2002) (finding no deliberate indifference where "the record indicated that prison medical staff evaluated [the plaintiff's] medical classification and changed the classification when it was thought appropriate to do so.").

Accordingly, all of the foregoing claims should be dismissed.

### 3. Americans with Disabilities Act

Plaintiff alleges, perfunctorily, that Defendants violated the Americans with Disabilities Act ("ADA"). [doc. # 1, p. 12]. To state a claim under the ADA, a plaintiff must allege: "(1) he has a qualifying disability; (2) he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) he is being discriminated against by reason of his disability." *Back v. Texas Dep't of Criminal Justice Institutional Div.*, 684 F. App'x 356, 358 (5th Cir. 2017); see 42 U.S.C. § 12132.

Here, even assuming that Plaintiff has a qualifying disability and that providing showers is one of the services, programs, or activities for which DWCC[4] is responsible, Plaintiff does not allege that Defendants discriminated against him by reason of his disability. See *Tuft v. Texas*, 410 F. App'x 770, 775 (5th Cir. 2011) (dismissing an ADA claim because, even assuming the plaintiff had a qualifying disability and that showers were services for which the public entity was responsible, the plaintiff proffered no evidence of disability discrimination). Rather, Plaintiff's ADA claim stems from the physician's decision to prescribe only a walker instead of access to a handicap shower. See *Back*, 684 F. App'x at 358 (finding that the "denial of a referral made by a doctor . . . for replacement footwear and . . . the delay of more than a year in the issuance of a medical subsequent storage box . . . [w]ere caused by negligence" rather than "intentional discrimination that was based on [the plaintiff's] disability . . . .").

---

[4] "State prisons fall squarely within the statutory definition of 'public entity,' . . . ." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

Moreover, Plaintiff seeks only compensatory and punitive damages. As to the former, he does not allege any intentional discrimination. A plaintiff asserting a private cause of action for violations under the ADA may only recover compensatory damages if defendants engaged in intentional discrimination. *Delano–Pyle v. Victoria, County, TX*, 302 F.3d 567, 575 (5th Cir. 2002). As to the latter, punitive damages are unattainable under the ADA. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002). Accordingly, Plaintiff's ADA claim should be denied.

**4. Medical Care**

Plaintiff faults Defendants for failing to provide adequate medical care after he fell. A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and

8

acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff fell in the shower on September 4, 2017, suffering a "big cut" or "extreme gash" on his toe. Defendant, Nurse Williams, gave Plaintiff two Tylenol and one package of triple antibiotic ointment. Plaintiff "made sick call" on September 5, 2017, but he claims he has yet to see a physician. [doc. # 6, p. 5].

Plaintiff's claim that he only received care from a nurse—rather than from a physician—does not establish that any Defendant was deliberately indifferent to his medical needs. Plaintiff is not constitutionally entitled to see a doctor instead of a nurse because prisoners are not entitled to "the best [care] that money could buy . . . ." *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992). Moreover, a grievance response attached to Plaintiff's Complaint reveals that Plaintiff received care on September 5, 2017, thus refuting any implication that Plaintiff received no care:

> On 9/05/17 you made a routine sick call request with the complaint that you had slipped and fell while coming out of the shower. The assessment completed by the medical staff revealed that you had an abrasion to your toe. Medical opinion is controlling. The medical staff has addressed your concerns in an appropriate manner

9

and in accordance with DOC Health Care Policy.

[doc. # 1-2, p. 22].

Plaintiff alleges further that he sought care on September 7, 2017, October 2, 2017, and October 5, 2017, for muscle spasms and pain, but officials refused to treat him. [doc. # 6, p. 6]. A second grievance response attached to his Complaint discredits this allegation:

> You have made repeated sick calls reporting complaints of pain. You were placed on a 30-day course of pain control medication by Dr. Hearn on 8/28/17. This order was repeated by Dr. Fuller on 10/6/17 after a sick call was reviewed.

[doc. # 1-2, p. 20]. In other words, Plaintiff complains that he received no care following his September 7, 2017, request, but the grievance response shows that he received pain control medication from August 28, 2017, through September 27, 2017. He also complains that he did not receive care following his two requests for care in October, but the same grievance response shows that a physician "repeated" Plaintiff's medication regimen following Plaintiff's requests.

Plaintiff next alleges that he has not received a CAT scan, an MRI, an x-ray, or treatment from a neurologist. He claims that these forms of care are necessary to determine if he re-injured his neck and back when he fell. [doc. # 6, pp. 7-8]. Again, however, Plaintiff is not entitled to the best care that money can buy. His allegations with respect to the lack of certain diagnostic scans amount to simple disagreements with the treatment he received,[5] and his complaint

---

[5] See *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("[W]hether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."); *Mathis v. Alexander*, 49 F.3d 728 (5th Cir. 1995) (finding complaints of not receiving an x-ray or follow-up examinations did "not rise to the level of deliberate indifference" because "[a] mere disagreement with one's medical treatment is not sufficient to state a cause of action . . . .").

concerning lack of care from a specialist fails to constitute deliberate indifference.[6]

Finally, Plaintiff complains that he is no longer prescribed Neurontin, a medication to aid his nerve pain. He took the medication for four years, but a physician "discontinued" it on August 27, 2017, informing Plaintiff that he did not need it. Plaintiff submitted sick call requests concerning the medication on September 7, 2017, and October 2, 2017, stating that his pain and muscle spasms were worsening, but he alleges that he did not receive a response. He submitted a third request on October 5, 2017, after he began feeling even more intense pain, numbness, burning, and itching.

The record reveals that medical professionals did respond to Plaintiff's requests for care. [doc. # 1-2, p. 20]. In addition, although a physician discontinued Plaintiff's Neurontin medication, the physician prescribed an alternative. *Id.* According to a grievance response:

> The DWCC physicians are in the best position to determine your course of care. They currently have not determined that Neurontin is needed to control your pain symptoms. You are encouraged to make repeat sick call if the current Mobic is not controlling your symptoms.

*Id.*

Plaintiff's disagreement with the physician's prescription does not state a claim of constitutional dimension. See *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference."); *Blaylock v. Revell*, 67 F. App'x 243 (5th Cir. 2003) (finding that an allegation that one physician "refused to continue [the plaintiff] on the pain medication that had been prescribed by [another physician was] a disagreement over the

---

[6] See *Davis v. Mississippi Dep't of Corr.*, 134 F. App'x 760 (5th Cir. 2005) (opining that "complaints about . . . the lack of further opinions from specialists do not rise to the level of deliberate indifference.").

11

type of medical care received, and, therefore, it [did] not rise to the level of a constitutional violation."); *Shockley v. Fox*, 444 Fed. App'x. 36, 37–38 (5th Cir.2011) (upholding dismissal of a claim that prison officials did not fill a narcotic prescription but instead offered other medications).[7]

Accordingly, Plaintiff's claims concerning inadequate medical care should all be dismissed.

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Larry Lewis's claims be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief can be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Preliminary and Permanent Injunction, [doc. # 1], be **DENIED AS MOOT**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R.**

---

[7] See also *Martin v. McCain*, 2017 WL 7051223, at *2 (W.D. La. Nov. 28, 2017) (dismissing an inmate's claim that a physician changed his medication from Neurontin to Cymbalta).

**Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 17th day of August, 2018.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE